NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2836
_____

UNITED STATES OF AMERICA

v.

BRANDON HORTON
a/k/a BRANDON WISE

BRANDON HORTON,
                                                              *Appellant*

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal Action No. 3-10-cr-00656-001)
District Judge:  Honorable Garrett E. Brown, Jr.
_____

Submitted Under Third Circuit LAR 34.1(a)
February 9, 2012
_____

Before: SLOVITER, VANASKIE, *Circuit Judges*,
and POLLAK, *District Judge**

(Opinion filed: March 7, 2012)
_____

OPINION
_____

_____

* Honorable Louis H. Pollak, Senior Judge of the United States District Court for the
Eastern District of Pennsylvania, sitting by designation.

POLLAK, *District Judge*.

Brandon Horton appeals from a judgment sentencing him to fifty-seven months in prison and three years of supervised release, entered after Horton pleaded guilty to one count of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1). Before imposing sentence, the District Court determined that the advisory sentencing guidelines called for a prison term ranging from fifty-seven to seventy-one months. That range was calculated pursuant to U.S.S.G. § 2K2.1(a)(2), which applies "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." A "crime of violence" for purposes of § 2K2.1 is defined by cross-reference to U.S.S.G. § 4B1.2(a), which provides that a "crime of violence"

> means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> > (1)  has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> >
> > (2)  is burglary of a dwelling, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Horton concedes that he has one prior conviction that qualifies as a "crime of violence." He contends, however, that the District Court erred in finding that a second prior conviction was also for a "crime of violence."

The disputed conviction stems from a July 2007 altercation for which Horton was initially charged with armed robbery. Ultimately, according to the judgment entered on

February 8, 2008, by the New Jersey Superior Court, Horton pleaded guilty to an amended charge of one count of third-degree aggravated assault. The judgment lists the statute of conviction as "2C:12-2b." Section 2C:12-2(b) prohibits, among other things, "manufactur[ing] or sell[ing] a golf ball containing acid or corrosive fluid substance." N.J. Stat. Ann. § 2C:12-2(b)(1). Both parties recognize that the citation to "2C:12-2b" was an error. What was intended instead was "2C:12-1b," which prohibits aggravated assault.

Under N.J. Stat. Ann. § 2C:12-1(b), a person is guilty of third-degree aggravated assault if he or she:

> (2) Attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon; or
>
> . . . .
>
> (7) Attempts to cause significant bodily injury to another or causes significant bodily injury purposely or knowingly or, under circumstances manifesting extreme indifference to the value of human life recklessly causes such significant bodily injury; or
>
> . . . .
>
> (9) Knowingly, under circumstances manifesting extreme indifference to the value of human life, points or displays a firearm, as defined in subsection f. of N.J.S. 2C:39-1, at or in the direction of a law enforcement officer; or
>
> (10) Knowingly points, displays or uses an imitation firearm, as defined in subsection f. of N.J.S. 2C:39-1, at or in the direction of a law enforcement officer with the purpose to intimidate, threaten or attempt to put the officer in fear of bodily injury or for any unlawful purpose; or
>
> (11) Uses or activates a laser sighting system or device, or a system or device which, in the manner used, would cause a reasonable person to believe that it is a laser sighting system or device, against a law

3

enforcement officer acting in the performance of his duties while in uniform or exhibiting evidence of his authority. . . .

The statute defines two additional forms of aggravated assault that are third-degree offenses only when "the victim suffers bodily injury." One of those additional forms of aggravated assault must be committed against one of an enumerated list of public servants, like police officers of firefighters, *see* N.J. Stat. Ann. § 2C:12-1(b)(5)(a)-(k), and the other requires "starting a fire or causing an explosion," *id.* § 2C:12-1(b)(8).

The February 8, 2008, judgment does not specify which subsection of the aggravated assault statute Horton was convicted of violating, and there is no charging document in the record that specifies the subsection. Horton pleaded guilty to the offense at a plea hearing held in New Jersey Superior Court on December 6, 2007. According to a transcript of the plea hearing, Horton, upon questioning from counsel and the sentencing judge, gave the following account:

Q On that evening [of July 11, 2007], did you happen to have an altercation?

A Yes.

Q And with whom did you have that altercation?

A Hugh Willow (phonetic).

. . . .

Q What happened?

A We had a physical confrontation.

THE COURT: Yes. So, what did you do to him?

A Smacked him.

4

THE COURT: Smacked him?

A Yeah.

THE COURT: Where?

A In the face.

THE COURT: Did he get injured?

A No. It was—no.

THE COURT: He didn't get injured?

A No.

After this exchange, the sentencing judge expressed concern that Horton was allocuting only to the elements of simple assault, rather than aggravated assault. (Under New Jersey law, a simple assault may be committed by "attempt[ing] to cause . . . bodily injury to another." N.J. Stat. Ann. § 2C:12-1(a)(1).) After some off-the-record discussion, Horton's colloquy resumed:

THE COURT: Now, Mr. Horton, you're still under oath, of course. Would you like to continue with what happened or what resulted and what your intent was, et cetera?

A I hit him in the face. I made his nose bleed. I—I intended to do it.

Q Just for the record. So, Mr. Horton, you're saying that when you— when you hit him, you caused his nose to bleed? Is that correct?

A Yes.

Prior to sentencing in the case at bar, Horton submitted a transcript of the above-quoted plea hearing and a copy of the February 8, 2008, judgment to the District Court. From these materials, Horton made two arguments at sentencing, both of which he

5

reprises on appeal. First, in Horton's view, the erroneous citation in the February 8, 2008, judgment to "2C:12-2b" renders that judgment unreliable evidence that he was convicted of third-degree aggravated assault, and this unreliability cannot be cured by looking at the plea hearing transcript because the colloquy at the hearing establishes, at most, the elements of a simple assault. Second, Horton argues that the judgment and transcript together do not establish which subsection of the third-degree aggravated assault statute he was convicted of violating, and not every form of third-degree aggravated assault constitutes a "crime of violence."

The District Court accepted the position of the Probation Office and the government that Horton's third-degree aggravated assault conviction reflected on the February 8, 2008, judgment constituted a "crime of violence," and that this was "confirmed, not contradicted by the plea hearing." The District Court's determination of whether a particular crime constitutes a "crime of violence" is reviewed *de novo* on appeal. *United States v. Stinson*, 592 F.3d 460, 462 n.1 (3d Cir. 2010).

The government bears the burden at sentencing of proving by a preponderance of the evidence that the defendant was convicted of a prior felony. *United States v. Howard*, 599 F.2d 269, 271-72 (3d Cir. 2010). "In satisfying its evidentiary burden . . . , the government may rely on certified copies of convictions. However, a court may also confirm a defendant's previous convictions by relying on the terms of the plea agreement, the charging document, the transcript of colloquy between judge and defendant, or other comparable judicial records of sufficient reliability." *Id.* at 272. In the present case, the government carried its burden of proving that Horton was convicted of third-degree

6

aggravated assault, N.J. Stat. Ann. § 2C:12-1(b). The February 8, 2008, judgment listed third-degree aggravated assault as the offense of conviction, and the erroneous citation to "2C:12-2b" rather than "2C:12-1b" did not render the judgment unreliable. *See United States v. Bonilla-Montenegro*, 331 F.3d 1047, 1049 (9th Cir. 2003) (typographical error in state-court judgment). Horton himself describes the citation as a clerical error.

The application of U.S.S.G. § 4B1.2 also depends upon which version of third-degree aggravated assault Horton was convicted of committing. "We generally employ the 'formal categorical approach,' . . . to determine whether an offense falls within the category of 'crime of violence.'" *United States v. Siegel*, 477 F.3d 87, 90 (3d Cir. 2007) (citing *Taylor v. United States*, 495 U.S. 575 (1990)). However, if "the disjunctive phrasing of the statute . . . invites inquiry into the specifics of conviction," *id.* at 91 (internal quotation marks omitted), we instead apply the "modified categorical approach" outlined in *Shepard v. United States*, 544 U.S. 13 (2005). *See United States v. Johnson*, 587 F.3d 203, 208 (3d Cir. 2009). The New Jersey aggravated assault statute, N.J. Stat. Ann. § 2C:12-1(b), proscribes at least seven separately enumerated forms of third-degree aggravated assault, not all of which appear to qualify as crimes of violence. *Cf. Siegel*, 477 F.3d at 91-92. Thus, it is appropriate under *Shepard* to consult the "transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant" to determine which of the forms of third-degree aggravated assault defined in § 2C:12-1(b) Horton was actually convicted of committing. *Shepard*, 544 U.S. at 26.

According to the plea colloquy, quoted above, Horton intentionally struck his victim in the face, causing the victim's nose to bleed. There is no indication in the transcript that the victim was a law enforcement officer or other public servant—as would have been required, as an element of the offense, to violate N.J. Stat. Ann. § 2C:12-1(b)(5), (9), (10), or (11). The transcript also does not suggest that Horton used an explosive device or started a fire, as required under § 2C:12-1(b)(8), or that he employed a deadly weapon, as required under § 2C:12-1(b)(2). *See also* N.J. Stat. Ann. § 2C:11-1(c) (defining "deadly weapon"); *State v. Rolon*, 974 A.2d 1021, 1026 (N.J. 2009). The plea colloquy thus leads us to conclude that Horton was convicted of violating § 2C:12-1(b)(7), which applies when an individual "[a]ttempts to cause significant bodily injury to another or causes significant bodily injury purposely or knowingly or, under circumstances manifesting extreme indifference to the value of human life recklessly causes such significant bodily injury." Horton emphasizes in his brief that § 2C:12-1(b)(7) may be violated with a *mens rea* of recklessness, which arguably would not constitute a "crime of violence." *See United States v. Lee*, 612 F.3d 170, 196 (3d Cir. 2010) (citing *Begay v. United States*, 553 U.S. 137 (2008)). But the plea colloquy makes explicit that Horton "intended" to hit his victim, and thus he acted "purposely or knowingly" rather than recklessly.

Having determined from consultation of the February 8, 2008, judgment and the plea hearing transcript that Horton committed a knowing or purposeful violation of N.J. Stat. Ann. § 2C:12-1(b)(7), we must determine whether such a crime is, categorically, a "crime of violence." The government argues that N.J. Stat. Ann. § 2C:12-1(b)(7) "has as

an element the use, attempted use, or threatened use of physical force against the person of another," as required to meet the definition of "crime of violence" contained in U.S.S.G. § 4B1.2(a)(1). We agree.

By its terms, N.J. Stat. Ann. § 2C:12-1(b)(7) requires, as an element of the offense, that the violator cause or attempt to cause "significant bodily injury," which means "bodily injury which creates a temporal loss of the function of any bodily member or temporary loss of any one of the five senses." N.J. Stat. Ann. § 2C:11-1(d). "Bodily injury," in turn, means "physical pain, illness, or any impairment of physical condition." *Id.* § 2C:11-1(a). The term "physical force" in U.S.S.G. § 4B1.2(a)(1) means "*violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 130 S. Ct. 1265, 1271 (2010) (emphasis in original) (construing materially identical language in 18 U.S.C. § 924(e)(2)(B)(i)).

Comparing the elements of the state crime and the federal guideline, we conclude that N.J. Stat. Ann. § 2C:12-1(b)(7) requires, as an element of the offense, the use of force sufficient to cause physical pain or injury (in the form of "temporal loss of the function of any bodily member or temporary loss of any one of the five senses"). *Cf. United States v. Ramirez*, 557 F.3d 200, 205-07 (5th Cir. 2009) (finding no plain error in treating N.J. Stat. Ann. § 2C:12-1(b)(7) as "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii)). Thus, Horton's predicate conviction for intentional third-degree aggravated assault was a "crime of violence," and he was properly sentenced by the District Court pursuant to U.S.S.G. § 2K2.1(a)(2).

9

Horton also argues, in the alternative, that his fifty-seven-month sentence was substantively unreasonable. We review the substantive reasonableness of a District Court's sentencing decision only for abuse of discretion. *United States v. Tomko*, 562 F.3d 558, 567-68 (3d Cir. 2009) (en banc). Horton maintains that the District Court's imposition of a sentence of fifty-seven months—the bottom of the guidelines range—was borne out of an improper overemphasis on Horton's criminal history and failed to take due account of mitigating circumstances. We have thoroughly reviewed the sentencing transcript and find no abuse of discretion. The District Court reasonably chose a sentence at the bottom of the guidelines range.

For the foregoing reasons, the District Court's judgment of sentence will be affirmed.